IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

DARRIUS A. HEUSER-WHITAKER,

Petitioner,

v.  CRIMINAL ACTION NO. 2:18-cr-177

UNITED STATES OF AMERICA,

Respondent.

*MEMORANDUM OPINION AND ORDER*

Before the Court is Darrius A. Heuser-Whitaker's ("Petitioner") *pro se* Motion to Vacate, Set Aside, or Correct a Sentence pursuant to 28 U.S.C. § 2255. ECF No. 640 ("Pet'r's Mot."). The Government filed a Motion to Dismiss Petitioner's Motion as untimely. ECF No. 644 ("Mot. to Dismiss."). Petitioner responded. ECF No. 646 ("Pet'r's Resp."). The Government filed a reply correcting its response to the Motion as being timely and included its response to Petitioner's Motion. ECF No. 649 ("Gov't's Reply"). The matter is now ripe for judicial determination. Having reviewed the Motion and relevant filings, the Court finds a hearing unnecessary to address Petitioner's Motion. *See* 28 U.S.C. § 2255(b) (A court shall grant a prompt hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."). For the reasons stated below, Petitioner's § 2255 Motion is **DENIED.**

I. FACTUAL AND PROCEDURAL HISTORY

On January 29, 2019, Attorney Anthony Gantous appeared as counsel in this case for Petitioner. ECF No. 75. On March 6, 2019, Petitioner was named in a five-count Superseding Indictment. ECF No. 141. Count One charged Petitioner with Conspiracy to Interfere with

1

Commerce by Means of Robbery, in violation of 18 U.S.C. § 1951(a). *Id.* Counts Four and Six charged Petitioner with Interference and Attempted Interference with Commerce by Means of Robbery, in violation of 18 U.S.C. §§ 1951(a) and 2. *Id.* Counts Five and Seven charged Petitioner with Using and Carrying a Firearm During and In Relation to a Crime of Violence, in violation of 18 U.S.C. §§ 924(c)(1)(A) and 2. *Id.* On July 23, 2019, a four-day jury trial commenced before the Court. ECF Nos. 240–245. At the close of the Government's case, Petitioner moved for a judgment of acquittal, which the Court denied. *Id.* On July 26, 2019, the jury returned a verdict finding Petitioner guilty on all Counts. ECF No. 246.

According to the Presentence Investigation Report ("PSR"), between September 25, 2018, to October 3, 2018, Petitioner was part of a conspiracy to rob grocery stores with his codefendants. PSR ¶¶ 14–15. The conspiracy involved at least a six-member team in each robbery to include lookouts, a getaway driver, and gunmen. *Id.* ¶ 16. Petitioner, Devonta Doyle, Quayshawn M. Davidson, and Cato M. Battle wore masks and clothing that covered their heads and faces during the robberies. *Id.* ¶ 17. Additionally, Brennan K. Smith, Willey E. Brooks, Jr., Monica Perkins, Keonte Yorkshire, and others served as lookouts inside the grocery stores, and Devonta Doyle, Brandon C. Tisdale, Trevor L. Tisdale, Keonte K. Yorkshire, and others served as outside lookouts. *Id.* The outside lookouts used police scanners to monitor police activity and encrypted communications and earpieces to communicate with the robbers. *Id.* ¶ 18.

Around September 29, 2018, Petitioner, along with Doyle, Battle, Brandon Tisdale, Trevor Tisdale, and Yorkshire, robbed a Food Lion in Virginia Beach, VA. *Id.* ¶ 20. Petitioner pointed a gun at a store employee's back and forced her to walk to the office area to obtain keys to the store safe. *Id.* ¶ 21. Petitioner and his codefendants stole U.S. currency from the Food Lion. *Id.* Around October 3, 2018, Petitioner, along with Battle, Doyle, Smith, Brandon Tisdale,

and Yorkshire, attempted to rob a Harris Teeter in Virginia Beach, VA. *Id.* ¶¶ 22–23. Petitioner and Doyle entered the store and pointed firearms at the store manager. *Id.* ¶ 24. They, along with Battle, forced him at gunpoint to the front of the store and demanded that he open the safe. *Id.* The manager explained he was unable to open the safe, and a struggle for the gun ensued, leading to Doyle and the manager falling to the floor. *Id.* Once Doyle stood up, he shot at the manager multiple times and struck the manager in the leg. *Id.* All three robbers and the lookouts fled the store. *Id.*

During the investigation into the instant offense, case agents searched Petitioner's residence along with a second residence and recovered multiple firearms, ammunition, and clothing worn during the robberies. *Id.* ¶ 25. Case agents also reviewed Petitioner's Instagram account, where he discussed making "money moves" at 11:00 pm with the other codefendants on October 1, 2018. *Id.* ¶ 26. Additionally, case agents saw messages with Petitioner trying to sell two firearms. *Id.* On October 26, 2018, Petitioner was arrested case agents interviewed him, but he asked for an attorney. *Id.* ¶ 27. On October 28, 2018, and November 7, 2018, Petitioner was recorded on a phone call from jail where he made some incriminating statements. *Id.* ¶ 28.

On November 7, 2018, case agents interviewed Boyle, where he advised that Petitioner carried a Glock during the Harris Teeter robbery. *Id.* ¶ 29. On November 15, 2018, case agents interviewed Brandon Tisdale, who confirmed the events during the Harris Teeter robbery. *Id.* ¶ 30. On November 26, 2018, case agents interviewed Yorkshire, who advised that Petitioner provided the firearms during the Food Lion robbery. *Id.* ¶ 31. On December 17, 2018, Petitioner was recorded on a phone call from jail, where he stated he told other inmates that Yorkshire communicated with law enforcement. *Id.* ¶¶ 32–33. It is noted that Yorkshire was assaulted while in the Western Tidewater Regional Jail. *Id.* On February 21, 2019, Petitioner was on a

recorded jail phone call discussing which of his codefendants pled guilty. *Id.* ¶ 35. On May 17, 2019, Petitioner texted his mother from jail and advised her to tell his brother to post a picture of all the cooperators' names, which his brother did on Instagram on May 23, 2019. *Id.* ¶ 36. While incarcerated, Petitioner passed notes to Brandon Tisdale, Trevor Tisdale, and Yorkshire instructing them not to cooperate with the Government. *Id.* ¶ 37.

Petitioner was assessed a Criminal History Category of III and a Total Offense Level of 32. *Id.* ¶¶ 135–36. On November 7, 2019, the Court sentenced Petitioner to 288 months of incarceration. ECF Nos. 377, 380. On November 13, 2019, Petitioner appealed his conviction and sentence. ECF No. 384. Attorney Laura P. Tayman represented Petitioner in his appeal. On July 25, 2022, the United States Court of Appeals for the Fourth Circuit issued an Unpublished Per Curiam Opinion affirming in part and vacating in part Count 7. ECF No. 569. The Court amended Petitioner's sentence to reflect the Fourth Circuit's ruling. EC No. 590.

On September 11, 2023, Petitioner timely filed the instant *pro se* Motion to Vacate, Set Aside, or Correct a Sentence pursuant to 28 U.S.C. § 2255.[1] Pet'r's Mot. First, Petitioner argues that the Government violated the Court's order granting his motion in limine regarding Federal Rules of Evidence Rule 404(b) evidence during the trial, which should have resulted in a mistrial. *Id.* at 5. Second, Petitioner argues that the Government improperly admitted Petitioner's jailhouse writings in violation of his Fourth Amendment rights and that the jailhouse writings contained Rule 404(b) evidence that the Court excluded. *Id.* at 6. Lastly, Petitioner argues that his trial counsel was ineffective for failing to challenge the Rule 404(b) evidence admitted during the trial and that his appellate counsel was ineffective for failing to raise this issue on appeal. *Id.* at 8. Petitioner requests that the Court vacate his conviction. *Id.* at 13. On October 16, 2023, the

---

[1] Petitioner executed his *pro se* Motion on September 5, 2023. However, the Clerk filed the Motion on September 11, 2023.

4

Government filed a Motion to Dismiss Petitioner's motion as untimely. On October 30, 2023, Petitioner responded, stating that his motion was timely. On November 20, 2023, the Government filed a reply stating that Petitioner's motion was, in fact, timely and included its response to Petitioner's motion.[2]

## II. LEGAL STANDARD

### A. Section 2255

Section 2255 allows a federal prisoner "claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . [to] move the court which imposed the sentence to vacate, set aside, or correct the sentence." 28 U.S.C. § 2255. In a motion based on § 2255 ("§ 2255 motion"), the petitioner bears the burden of proving his or her claim by a preponderance of the evidence. *See Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958). Additionally, *Pro se* filers are entitled to more liberal construction of their pleadings. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

When deciding a § 2255 motion, the Court must promptly grant a hearing "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Motions under § 2255 generally "will not be allowed to do service for an appeal." *Sunal v. Large*, 332 U.S. 174, 178–79 (1947). For this reason, issues already fully litigated on direct appeal may not be raised again under the guise of a collateral attack. *United States v. Dyess*, 730 F.3d 354, 360 (4th Cir. 2013). Issues that should have been raised on direct appeal are deemed waived, procedurally defaulted, and cannot be raised on a § 2255 motion. *United States v. Mikalajunas*, 186 F.3d 490, 492 (4th Cir. 1999).

---

[2] The Court finds that the Government's delay in submitting the proper brief will not prejudice Petitioner and that this case should be decided on the merits rather than procedural defaults. *See Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc.*, 616 F.3d 413, 417 (4th Cir. 2010). Therefore, the Court accepts the Government's delayed response to Petitioner's Motion.

5

However, an individual may raise a procedurally defaulted claim if he or she can show (1) "cause and actual prejudice resulting from the errors of which he complains" or (2) that "a miscarriage of justice would result from the refusal of the court to entertain the collateral attack . . . [meaning] the movant must show actual innocence by clear and convincing evidence." *Id.* at 492–93. To demonstrate cause and prejudice, a petitioner must show the errors "worked to [his or her] actual and substantial disadvantage, infecting [his or her] entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982). Ineffective assistance of counsel claims should generally be raised in a collateral motion instead of on direct appeal and constitute sufficient cause to review a procedurally defaulted claim. *See Untied States v. Benton*, 523 F.3d 424, 435 (4th Cir. 2008); *Mikalajunas*, 186 F.3d at 493.

### B. Ineffective Assistance of Counsel Claim

A viable ineffective assistance of counsel claim arises when "the counsel's conduct so undermined the proper functioning of the adversarial process that the trial did not result in a just outcome." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). An ineffective assistance of counsel claim is properly raised on a § 2255 motion in the district court rather than on direct appeal, unless the record conclusively shows ineffective assistance. *United States v. Williams*, 977 F.2d 866, 871 (4th Cir. 1992). To prove a claim of ineffective assistance of counsel, a petitioner must make two showings.

First, a petitioner must show that counsel's performance was deficient. *Strickland*, 466 U.S. at 687. Counsel's errors must have been so serious that he or she was not actually functioning as "counsel" as guaranteed by the Sixth Amendment. *Id.* To demonstrate deficient performance, a petitioner must show "that counsel's representation fell below an objective standard of reasonableness" under the prevailing norms of the legal community. *Id.* at 688.

"Judicial scrutiny of counsel's performance must be highly deferential," so "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. That presumption is even greater when counsel's decisions represent strategic tactical decisions requiring "assessment and balancing of perceived benefits against perceived risks." *United States v. Terry*, 366 F.3d 312, 317 (4th Cir. 2004). A petitioner bears the burden of rebutting this presumption. *Strickland*, 466 U.S. at 689.

Second, a petitioner must show that the deficient performance prejudiced the defense. *Id.* at 687. In other words, counsel's errors must have been so serious that the petitioner was deprived of a fair trial with a reliable result. *Id.* To demonstrate prejudice, a petitioner must prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The Supreme Court defines a reasonable probability as "a probability sufficient to undermine confidence in the outcome." *Id.* In short, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgement of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. If a petitioner cannot meet either component of the *Strickland* test, the ineffective-assistance claim will fail. *Id.* at 700. The Court need not address both components of the test if petitioner makes an insufficient showing on one prong. *Id.* at 697.

### III. DISCUSSION

Petitioner moves the Court to vacate his convictions based on three grounds: (1) the Government violated the Court's order granting Petitioner's motion in limine regarding Rule 404(b) evidence; (2) the Government admitted jailhouse writings containing excluded Rule 404(b) evidence in violation of Petitioner's Fourth Amendment rights; and (3) Petitioner's counsels were ineffective for failing to challenge the Rule 404(b) evidence during trial and on

appeal. The Court will address each claim separately.

### A. The Government violated the Court's order granting Petitioner's motion in limine regarding Rule 404(b) evidence.

First, Petitioner claims that the Government violated the Court's order granting his motion in limine regarding Rule 404(b) evidence of an uncharged crime. Pet'r's Mot. at 5. Petitioner asserts that the Court stated it would grant a mistrial if the Government introduced the excluded evidence. *Id.* Petitioner argues that the Government repeatedly mentioned and showed pictures of the excluded evidence many times, which violated his constitutional right to a fair trial. *Id.*

The re-litigation bar provides that a defendant cannot "circumvent a proper ruling . . . on direct appeal by re-raising the same challenge in a § 2255 motion." *See United States v. Dyess*, 730 F.3d 354, 360 (4th Cir. 2013). A defendant cannot relitigate issues on collateral review. *See United States v. Roane*, 378 F.3d 382, 396 n.7 (4th Cir. 2004). In this case, Petitioner's appellate counsel, Laura Tayman, raised this issue on appeal. *See* USCA4 Appeal 19-4837, Opening Brief of Appellant at 35–40 ("Despite this clear and unequivocal ruling granting the motion in limine, the Government persisted in their effort to connect Appellant to an AR-15 assault rifle."). Additionally, Ms. Tayman addressed this issue in Petitioner's reply brief. USCA4 Appeal 19-4837, Reply Brief of Appellant at 5 ("Despite the court's clear ruling that the evidence of other crimes was not admissible, the government was relentless in their effort to introduce evidence of the assault rifle, arguing that the unrelated assault rifle should be admitted to tie Appellant to the jailhouse writings.").

The Fourth Circuit reviewed "the facts and legal contentions . . . presented in the materials" and decided that "argument would not aid the decisional process." ECF No. 569 at 7.

8

Nevertheless, Petitioner is barred from relitigating this issue the Fourth Circuit already considered. *Boeckenhaupt v. United States*, 537 F.2d 1182, 1183 (4th Cir. 1976) (holding that a defendant "will not be allowed to recast, under the guise of collateral attack, questions fully considered by" the Fourth Circuit.). Therefore, Petitioner's first claim is procedurally barred and denied.

### B. The Government admitted illegally obtained jailhouse writings in violation of Petitioner's Fourth Amendment rights.

Petitioner claims that the subpoena to search his cell at Western Tidewater Regional Jail did not authorize the seizure of the jailhouse writings. Pet'r's Mot. at 6. Petitioner argues that the jailhouse writings were outside of the "legal premises authorized by the subpoena, which violated his [Fourth] [A]mendment rights." *Id.* Additionally, the jailhouse writings mentioned Rule 404(b) evidence that the Court excluded. *Id.*

In this case, Petitioner did not raise the alleged illegal seizure of the jailhouse writings on appeal. In fact, Petitioner's own Reply Brief states that the jailhouse writings were seized from his cell, which demonstrates the jailhouse writings were lawfully seized. *See* USCA4 Appeal 19-4837, Reply Brief of Appellant at 2. Petitioner procedurally defaulted on this claim since he failed to mention the alleged illegal seizure on appeal. *See Mikalajunas*, 186 F.3d at 492. Petitioner fails to demonstrate cause and actual prejudice or a miscarriage of justice for procedurally defaulting on this issue. *Id.* at 492–93 (stating a movant may raise a procedurally defaulted claim if he or she can show cause and actual prejudice or that a miscarriage of justice would result.). Even if Petitioner was found not to have procedurally defaulted on this claim, it is frivolous because both parties stipulated that the Government lawfully seized the jailhouse writings. *See* ECF No. 244 at 3 (Stipulation #7: Cell Documents). Further, Ms. Tayman informed

9

Petitioner that "there are no nonfrivolous grounds to seek further review of the sole remaining issue regarding admissibility of the '[jailhouse]' writings." Pet'r's Resp. at Ex. A. Therefore, Petitioner's second claim is denied.

### C. Petitioner's counsels were ineffective for failing to challenge the Rule 404(b) evidence during trial and on appeal.

Petitioner claims both his trial counsel, Mr. Gantous, and his appellate counsel, Ms. Tayman, failed "on numerous accounts to predicate for the record that the [J]udge [issued] a mandate and order instructing the prosecutor not to mention the 404(b) evidence." Pet'r's Mot. at 8. Petitioner asserts this failure denied him a fair trial. *Id.*

To show ineffective assistance of counsel, a petitioner must show that counsel's performance was deficient and secondly, that counsel's deficient performance prejudiced him. *See Strickland*, 466 U.S. at 687–88. Additionally, "reviewing courts must accord appellate counsel the 'presumption that he decided which issues were most likely to afford relief on appeal.'" *Bell v. Jarvis*, 236 F.3d 149, 164 (4th Cir. 2000).

In this case, Mr. Gantous took several steps to exclude the Rule 404(b) evidence of the uncharged robbery. Mr. Gantous filed a motion in limine to exclude the uncharged robbery, which the Court granted. ECF No. 238 ("Motion in Limine"). Mr. Gantous objected to photographic evidence of the uncharged robbery, which the Court sustained. Trial Transcript Day 3 at 485:11–25, ECF No. 420. Mr. Gantous also objected to the admission of the jailhouse writings, which contained evidence of the uncharged robbery, as prejudicial, which the Court overruled. *Id.* at 505:7–16. It is evident from the record that Mr. Gantous did, in fact, challenge the Rule 404(b) evidence.

Regarding appellate counsel, Ms. Tayman, argued in Petitioner's Opening Brief that Rule 404(b) evidence was improperly admitted. *See* USCA4 Appeal 19-4837, Opening Brief of Appellant at 35–40; *see also* USCA4 Appeal 19-4837, Reply Brief of Appellant at 5. It is evident from the record that Ms. Tayman decided "which issues were most likely to afford relief on appeal." *Bell v. Jarvis*, 236 F.3d 149, 164 (4th Cir. 2000) (internal citation and quotations omitted). Petitioner has not shown that counsel's performance was deficient. *See Strickland*, 466 U.S. at 687–88. Instead, the record demonstrates that both counsels zealously advocated on behalf of Petitioner at trial and on appeal. Therefore, Petitioner third claim for relief is denied.

## IV. CONCLUSION

For the reasons stated above, Petitioner's § 2255 Motion is **DENIED**. ECF No. 640.

This Court may issue a certificate of appealability only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b)(1). This means that Petitioner must demonstrate that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)); *see United States v. Swaby*, 855 F.3d 233, 239 (4th Cir. 2017). Petitioner's claims are based upon incorrect interpretations of statutory provisions and judicial precedent. As such, Petitioner fails to demonstrate a substantial showing of a denial of a constitutional right, and a Certificate of Appealability is **DENIED**.

In addition, the Court **ADVISES** Petitioner that he may appeal from this Final Order by forwarding a written notice of appeal to the Clerk of the United States District Court, United States Courthouse, 600 Granby Street, Norfolk, Virginia 23510. The Clerk must receive this

written notice within sixty (60) days from this Order's date. The Court **DIRECTS** the Clerk to provide a copy of this Order to all Parties.

**IT IS SO ORDERED.**

Norfolk, Virginia
January 19, 2024

Raymond A. Jackson
United States District Judge

12